**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 19 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**T. MICHAEL CARTER**
Scottsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RONALD PEARSON, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 36A04-1211-CR-610 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE JACKSON CIRCUIT COURT
The Honorable William E. Vance, Judge
Cause No. 36C01-1108-FA-12

**September 19, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Ronald Pearson appeals his aggregate thirty-nine-year sentence for multiple drug-related convictions.  We affirm.

## Issue

The sole issue before us is whether Pearson's sentence is inappropriate.

## Facts

On July 15, 2011, a confidential informant working with the Jackson County Sheriff's Department went to Pearson's home in Freetown and made a controlled buy of approximately one gram of methamphetamine for $100.  The informant had to wait to make his purchase because someone else was making a purchase from Pearson when the informant arrived.  On July 21, 2011, the informant made a second purchase from Pearson at his home of approximately 3 grams of methamphetamine for $300.  On August 18, 2011, the informant made a third purchase from Pearson at his home of approximately one gram of methamphetamine for $100.  Pearson's home, which was equipped with an external video surveillance system, was located approximately 250 feet away from a residential apartment complex.

On August 31, 2011, law enforcement officers executed a search warrant at Pearson's home.  Upon arresting Pearson, they discovered marijuana on his person.  Throughout the house, officers also found additional marijuana, clonazepam, lorazepam, hydromorphone, and hydrocodone.  They also recovered drug paraphernalia and indicia of methamphetamine manufacturing or dealing, such as a glass pipe, a scale, plastic

baggies, eighty-four grams of pseudoephedrine, and a white powdered "cutting agent" used to dilute controlled substances. Tr. p. 321.

The State charged Pearson with three counts of Class A felony dealing in methamphetamine within 1000 feet of a family housing complex, four counts of Class C felony possession of a controlled substance, one count of Class D felony maintaining a common nuisance, one count of Class A misdemeanor possession of marijuana, and one count of Class A misdemeanor possession of paraphernalia. A jury found Pearson guilty of all counts as charged. The trial court imposed sentence of thirty-five years fully executed for each of the Class A felonies, to be served concurrent to each other. It also imposed sentences of four years, two suspended, for each of the Class C felonies; two years, one-and-a-half suspended, for the Class D felony; and one year executed for the Class A misdemeanors, all to be served concurrent to each other but consecutive to the Class A felony sentences. The net result was a total term of thirty-nine years, with thirty-seven years executed and two suspended. Pearson now appeals.

**Analysis**

Pearson argues that his sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offense. See Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007). Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing

3

decisions.  Id.  "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate."  Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008).  We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count."  Id.  Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case.  Id. at 1224.  When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

At the outset, we note that Pearson argues in part that "courts have exercised caution when reviewing sentences that were at or near the maximum range for the underlying charge."  Appellant's Br. p. 8.  However, none of Pearson's sentences individually, nor his aggregate sentence of thirty-nine years with two years suspended,

approach the maximum. The maximum possible sentence for just one Class A felony would have been fifty years. See Ind. Code § 35-50-2-4.[1]

Regarding Pearson's character, he directs us to his record of military service, employment history, and testimony from one of his six children and his mother that he was a good father. We note, however that the daughter who testified on his behalf had her own past problems with methamphetamine addiction. Although she claimed that Pearson was not her methamphetamine supplier, he certainly could not have been a positive influence regarding illegal drug usage for her or his other children.

Following his honorable discharge from the Army, Pearson amassed the following criminal record: a 1991 conviction for Class A misdemeanor possession of marijuana; a 1992 conviction for class B misdemeanor public intoxication; a 1993 conviction for Class B misdemeanor disorderly conduct; a 1996 conviction for Class B misdemeanor battery; two 2002 convictions for Class D felony possession of methamphetamine; and a 2009 conviction for Class D felony possession of methamphetamine. Pearson also had his probation revoked for his 2002 convictions. Obviously, much of Pearson's criminal history is related to substance abuse, particularly methamphetamine abuse over the last decade or more, and he argues that his "addiction got the best of him" and was a causal

---

[1] On the other hand, we note the State's counterargument that the maximum sentence Pearson possibly faced was 187 years, if he had received maximum and consecutive sentences on each count. As a matter of law, it is doubtful that such a sentence could have withstood appellate scrutiny. The three A felony dealing convictions were for three controlled buys orchestrated by law enforcement over a relatively short period of time. Our supreme court has dictated that sentences for convictions of this kind generally must be served concurrently, not consecutively. See Gregory v. State, 644 N.E.2d 543, 546 (Ind. 1994). The trial court here correctly ordered the sentences for the three dealing convictions to be served concurrently.

factor in the present and previous offenses. Appellant's Br. at 10. We recognize that methamphetamine addiction is pernicious, but Pearson has had multiple opportunities to address that addiction, both in and out of prison. Furthermore, Pearson's most serious convictions in the present case related not just to personal drug possession or "cooking" methamphetamine for personal use but to extensive drug dealing. We believe Pearson's criminal history reflects poorly upon his character and his long-standing substance abuse problem does not alter that perception.

As for the nature of the offense, Pearson clearly was conducting an ongoing and substantial drug-dealing operation from his home in a residential area near an apartment complex.[2] Aside from methamphetamine, Pearson also was in illegal possession of marijuana and a mini-pharmacy of prescription medications, with the end result being convictions for ten separate criminal offenses. Pearson argues in part that his crimes "did not result in any violence or physical harm to anyone . . . ." Id. That may be true as to "violence," but Pearson should know better than most, from personal experience, the very tangible harm that methamphetamine causes to individuals, families, and communities. His feeding of the methamphetamine addiction of others clearly was not a "victimless" crime.

On a final note, Pearson argues that his sentence is a virtual "life" sentence, given his current age of fifty-one. Pearson's possible advanced age when leaving prison is at

---

[2] We are able to reach this conclusion based upon the evidence presented at trial and not upon an officer's unsworn assertion at the sentencing hearing that Pearson was one of the largest methamphetamine dealers in the area.

most only an unfortunate collateral consequence of his own extensive criminal conduct and is not, by itself, a reason for reducing his sentence.

## Conclusion

Given Pearson's criminal history, along with the severity of his criminal conduct and the sheer number of offenses he committed, we cannot say that his sentence of thirty-nine years with two years suspended is inappropriate. We affirm.

Affirmed.

CRONE, J., and PYLE, J., concur.